FIDELITY & CASUALTY CO. OF NEW YORK *v.* CROSS.

[95 South. 631. No. 23080.]

1. INSURANCE. *Examinations showing applicant physically sound held not within term "medical or surgical attention received" in application.*

A question in an application for insurance which calls for a disclosure of the medical or surgical attention previously received by the applicant does not require an applicant to disclose the fact of previous medical examinations which showed that the applicant was in good health and physically sound at the time such examinations were made, as such examinations do not come within the meaning of the term "medical or surgical attention received" as used in the application.

2. INSURANCE. *Insurer cannot avoid liability on life policy because answers in application untrue where full disclosure made to agent.*

Where an applicant for insurance fully disclosed to the agent of an insurance company the facts in regard to a prior illness suffered by him, and from which he had apparently fully recovered, and the agent advised him that the fact of such illness was not material, and the agent, with full knowledge of all the facts, took charge of the preparation of the application for insurance, and the applicant did not sign such application and had no knowl-

edge of the· fact that it had been prepared until the policy was delivered, the insurance company cannot avoid liability on the policy on the ground that the application failed to disclose material information, although the insured accepted the policy with this unsigned application attached thereto as a part thereof.

3. INSURANCE. *Insurer cannot avoid liability on policy for failure of application to disclose material information because of omission of agent, and applicant acts in good faith.*

   If an agent of an insurance company undertakes the preparation of an application for insurance in his company, and suggests or advises what facts are material to the risk, or what questions shall be answered, or what will be a sufficient answer, and, by mistake or omission, fails to record material facts within his knowledge, the company cannot avoid liability on the policy on the ground that the application failed to disclose material information, if the applicant has acted in good faith throughout and has fully disclosed the facts to the agent.

4. APPEAL AND ERROR. *Findings of chancellor not disturbed unless are manifestly wrong.*

   The findings of a chancellor upon conflicting evidence will not be disturbed on appeal where it cannot be said that such findings are manifestly wrong.

Appeal from chancery court of Clay county.

HON. A. J. MCINTYRE, Chancellor.

Suit by Dr. Chaillos Cross against the Fidelity & Casualty Co. of New York. From a judgment for plaintiff, defendant appeals. Affirmed.

*Alexander & Alexander,* for appellants.

Breach of warranty on the part of appellee regarding his previous medical or surgical attention, and his condition of health.

There is one indisputable fact that stands boldly out in this case, and that is that the statements contained in the application are admittedly false.

Not only are the statements contained in the application made warranties, by the terms of the contract itself, but as a matter of law "the general rule that statements

relating to the health and physical condition of the applicant for insurance are material to the risk and, if false, are fatal to the policy, is well settled." Cooley's Briefs Volume No. 3, p. 2096.

We appreciate that our court has been liberal in drawing the distinction between representations and warranties, but we are unable to find any case where recovery could be had on a policy when an applicant either made or knowingly permitted false statements to be incorporated in his application of matters material to the risk. 14 Ruling Case p. 1027; 14 R. C. L. p. 1069. We refer the court especially to the case of *Hoke* v. *National Life & Accident Insurance Company,* 103 Miss. p. 269, 60 So. Rep. 218.

This case is unlike the case of *Fidelity Mutual Life Insurance Company* v. *Miazza,* 93 Miss. 422, 48 So. 1017. In the Miazza case the applicant for insurance informed the company of his illness and confinement in a sanitarium at Memphis, and the court merely held in that case that the case would not be reversed, because the applicant for insurance did not give the company the details of his illness; the court saying: "We only hold that where there has been a disclosure of this kind, setting out in general terms the nature of the malady, it becomes peculiarly a question of fact for the jury as to whether the applicant has sufficiently gone into detail of his illness.

Appellee was guilty of gross fraud and deception, and is not entitled to recover in a court of equity, regardless of any notice or knowledge by the broker, Savery?

The fact that the agent, Savery, may have had some knowledge of the influenza attack will not relieve Dr. Cross from coming into a court of equity with clean hands. If there had been a deliberate effort on the part of Mr. Savery to defraud the appellant company, Dr. Cross would not be thereby entitled to recover when he, with full knowledge of all the facts permitted the company to issue a policy on himself as a risk, when he was not then in good health, and when the company had not been advised of his previous conditions of health.

The policy provides that "the falsity of any statement on the application for this policy materially affecting either the acceptance of the risk or the hazard assumed hereunder, or made within intent to deceive, shall bar all right to recover under this policy." The falsity is the gist of our defense.

We most earnestly insist that this company should not be penalized into insuring a sick man merely because the agent, Savery, seemed to be looking after the interest of Dr. Cross instead of the company. The right of Dr. Cross to recover depends upon his *bona fides*, and by reason of his peculiar knowledge of all the facts, it was his duty to disclose them in full.

Vol. E, page 2569, Cooley's Briefs, Vol. 7 (Supplement) Cooley's Briefs, page 2569. *Lyon* v. *United Moderns,* 184 Cal. 470, 4. L. R. A. (N. S.) 347; *Schwartz* v. *Royal Neighbors of Am.,* 108 Pac. 51; *McComb* v. *Insurance Company,* 141 N. W. 328; *Bonewell* v. *Insurance Company,* 125 N. W. 59; *Hollenbeck* v. *Insurance Company,* 113 S. W. 217; *Mallen* v. *National Life Insurance Association,* 153 S. W. 1065; *Mudge* v. *Sup. Ct. I. O. O. F.,* 112 N. W. 1130, 14 L. R. A. (N. S.) 279, 14 R. C. L. page 353; 48 R..C. L. (N. S.) 714, 13 L. R. A. (N. S.) 856; *Maier* v. *Fidelity Mut. Life Asso.,* 24 C. C. A. 243, 47 U. S. App. 329, 78 Fed. 570; *Gardner* v. *North State Life Insurance Company, supra;* Tiffany, Agency, pp. 229-326; *Sprinkle* v. *Knight Templar & M. Life Indemnity Co.,* 124 N. C. 405, 32 S. E. 734; Tiffany, Agency pp. 262, 263; *Sprinkle* v. *Knights Templar & M. Life Indemnity Co.,* 124 N. C. 405, 32 S. E. 434; *Commercial Bank* v. *Burgyn,* 110 N. C. 267, 17 L. R. A. 326, 14 S. E. 623; *Stanford* v. *A. F. Messick Grocery Co.,* 143 N. C. 419, 45 S. E. 815.

*Paine & Paine,* for appellee.

Counsel for appellant in their brief clearly demonstrate that this is simply an appeal on controverted facts. They

assign four alleged errors, but in their brief have abandoned the second assignment, and we will of course not burden the court by replying to this alleged error.

Counsel's first "ground for which we ask for reversal," is the alleged "breach of warranty on the part of appellee regarding his previous surgical or medical attention and his condition of health." They cite several authorities including one from Mississippi. We do not take issue with them as to this law and will not burden the court with any reply thereto for the simple reason that it was not applicable to appellant's contention. Take for example the Mississippi case, to-wit: *Hoke* v. *National Life & Accident Insurance Company,* 103 Miss. 269.

In that case the court had before it an appeal from a controverted fact decided by a jury in favor of the insurance company. Hoke swore he did not sign the application, which contained a misstatement material to the risk and that he did not know what was contained therein. The insurance company, however, produced the original application, with Hoke's name signed to it and then by a comparison of signatures proved to the satisfaction of the jury that he did actually sign the application. Of course, if he signed it, he knew it contained false warranties, and the court properly held the policy void and affirmed the case.

We respectfully submit that instead of this case being in point to sustain appellant, that it is an authority for appellee.

We insist in the first place there was never any application binding appellee, because he never saw it and never signed it and knew nothing about it and in the second place even if it could be held by any legal legerdemain that it was his application, that he made full disclosures to the agent of appellant and if this agent overlooked writing the facts in the application or thought them of no consequence, appellee is not bound by it.

By issuing and delivering the policy in this case without ever having had any application executed by appellee, the appellant waived the necessity of the application and cannot bind the appellee with any alleged breach of warranty or misrepresentation in the so-called unsigned application. See *Georgia Home Insurance Co.* v. *Homes,* 23 So. 183.

But counsel argued appellee is bound to know that the application concealed material facts, because he kept the policy with a copy of the application on the back of it. In reply to this, we insist that since the appellee made no application the so-called application formed no part of the policy and he could have disregarded it even had he seen it before his loss. He made no warranty and cannot be held to have breached any warranty.

We also present the following argument supported by Mississippi authorities. Appellee concealed nothing from appellant but made full disclosures to it, through its agent Savery. Savery was fully advised by appellee of the attack of pleurisy with effusion and not only of that but was apprized by appellee of the various kinds of pleurisy and the physical effect of same. Savery was also informed of the influenza, both by appellee and his physician, Dr. Hampton, and with this full and complete knowledge, appellee's agent took it upon himself to write out an application, determining for himself what should be placed in the application and actually sent it to appellant without ever having submitted it to appellee, or having procured appellee's signature to the same. Under the Mississippi Statute law and the decisions cited below, the notice to this agent, was notice to appellant. 1 Corpus Juris, page 405, sec. 8D. Same volume, page 423F.

Under section 5078, Hemingway's Code, Savery was an agent of appellant since he "solicited the insurance on behalf of appellant" and he "received the policy and delivered the policy of insurance to appellee and collected and transmitted the premium for this insurance policy."

And this section provides that any such person "shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever condition or stipulations may be contained in the policy or contract." *Big Creek Drug Co.* v. *Stuyvessant Insurance Co.,* original opinion 57 S. R. 768. Opinion on suggestion of error 115 Miss. 561. We also call the court's attention to *Planters Insurance Company* v. *Myers,* 55 Miss. 479; *American Life Insurance Co.* v. *Mahone,* 56 Miss. 180; *Mutual Reserve Fund Life Association* v. *Ogletree,* 77 Miss. 7; *Fraternal Aid Union* v. *Whitehead,* 87 So. 543.

The next assignment of error argued by counsel for appellant is that the appellee was guilty of gross fraud and breach of warranty and is not entitled to a recovery regardless of any notice or knowledge of the agent, Savery.

It is very easy for counsel to charge fraud but it was impossible for them to prove it and the chancellor decided this squarely against appellant. We can see no use in arguing this with the court. The chancellor was justified and authorized under the evidence to find for appellee and we respectfully submit that as to this appeal it is a settled question and one which will not be reopened by this court.

The authorities cited by counsel under this assignment announce good law; but inapplicable to the fact as decided by the chancellor.

But we cannot and do not agree with counsel as to the deductions made by them from the facts, and neither did the chancellor.

Cook, J., delivered the opinion of the court.

On October 14, 1920, Dr. Chaillos Cross instituted a suit in the circuit court of Clay county against the Fidelity & Casualty Company of New York seeking to recover on a permanent disability policy for certain periods of disabil-

ity then claimed by him.  Service of summons was had on T. M. Henry, state insurance commissioner, and, the casualty company having failed to enter its appearance, in due .course, at the January, 1921 term of the court, a default judgment was entered against the company.  After the adjournment of the term of court, notice of the default judgment was given to the insurance commissioner, and he then notified the casualty company of the judgment, and it then prosecuted an appeal to this court, seeking thereby to set aside this default judgment on the ground that the casualty company was a foreign corporation, and service of process was not had on it as provided for in section 920 of the Code of 1906.  This contention of the casualty company did not prevail, and the judgment of the court below was affirmed, the opinion of this court being reported in 127 Miss. 31, 89 So. 780.

Thereafter the casualty company filed a bill in the chancery court of Clay county, Miss., alleging that its failure to plead to or defend the suit in the circuit court was the result of an accident or mistake, that it had no notice of the suit whatever, and that it had a good defense to the suit, and prayed for a new trial.  In this bill a temporary injunction was sought to prevent execution on the default judgment, and to prevent the insurance commissioner from taking steps to forfeit the casualty company's right to do business in this state for failure to pay the judgment within the time required by law, and the chancellor granted this temporary injunction.

While this suit was pending in the chancery court, on the 2d day of May, 1921, Dr. Cross filed another suit in the circuit court seeking to recover from the casualty company on the same policy for a period of about six months subsequent to the period covered by the first suit.  On November 28, 1921, he filed his third suit against the same defendant on the same policy seeking to recover for alleged disability for another `subsequent period of time. Thereafter the casualty company filed a motion in the cir-

cuit court to transfer these two last cases to the chancery court, and this motion was sustained. When these causes came on for trial in the chancery court, on motion of the casualty company, they were consolidated into one, and, after a trial on the merits, the lower court rendered its decree in favor of Dr. Cross for the sum of eight thousand one hundred thirty-two dollars and fifty-eight cents, representing the total demand in the three suits, and from this decree the casualty company prosecuted this appeal.

The facts as developed by the testimony in this record are substantially as follows: The appellee was a physician of about thirty-five years of age, who was well equipped educationally and by experience in medical and hospital work, and who had attained considerable reputation in public health work. For some years prior to June, 1920, he was engaged in public health work in the state of Mississippi, being the state director of rural sanitation, and on the staff of the International Health Board, Rockefeller Foundation. In January, 1918, while engaged in the same character of work at Laurel, Miss., he suffered an attack of pleurisy, which was accompanied by effusion, and was confined to his bed for about 12 days. There is testimony to the effect that this attack of pleurisy was mild, and the chancellor so found, but there is also testimony to the effect that it was followed by a slight thickening of the lower left pleura.

After recovering from this attack of pleurisy, appellee continued in the discharge of his duties, and was apparently in good health until February, 1920, when he suffered an attack of influenza. Appellee testified that the International Health Board required all the physicians employed by it to undergo periodical physical examinations, and in October, 1918, acting under the instructions of his superior in New York, he had a thorough physical examination made by Dr. George S. Bel, a specialist of New Orleans, La. Dr. Bel testified that he found no evidences whatever of tuberculosis, and that appellee was then perfectly sound and normal.

During the year 1919 appellee located in the city of Tu-
pelo, Miss., and thereafter, desiring to secure a health dis-
ability policy, he applied to C. R. Savery, an insurance
agent, for a policy in the Ætna Insurance Company. This
agent did not represent the Aetna at that time, and sug-
gested to appellee that he could protect him by giving him
a policy with the United States Fidelity & Guaranty Com-
pany until he could secure the agency for the Aetna. At
that time, November, 1919, appellee gave this agent, Sav-
ery, the information about his health and previous physical
condition from which the agent prepared the application
for this policy. Appellee testified, and it was not denied
by the agent, Savery, that he disclosed fully all the facts
in regard to his previous attack of pleurisy with effusion.
Upon the application prepared by this agent, a policy was
issued by the United States Fidelity & Guaranty Company,
but this policy was never delivered, and appellee never
saw it. Later, about the middle of January, 1920, the
agent, Savery, secured a policy in the Aetna Insurance
Company, and this policy was delivered to appellee.

During January, 1920, appellee was examined for life
insurance by Dr. T. F. Elkin, of Tupelo, a witness for ap-
pellant, and this witness testified that he found nothing
which rendered him unsound as an insurance risk. Shortly
thereafter, about the last of January, appellee suffered an
attack of influenza which confined him to his room for about
eight days. He recovered from this illness, and his attend-
ing physician testified that it was a simple case of in-
fluenza and no ill effects followed therefrom. After he
recovered from this attack of influenza, appellee called on
the agent, Savery, to make a claim against the Aetna In-
surance Company for loss of time resulting from the in-
fluenza. Savery was fully advised in regard to this attack
of influenza and endeavored to make the collection there-
for from the Aetna Insurance Company, but, on account of
some technical objection, that company declined to pay.
The failure of the Aetna to pay this claim caused appellee

to become dissatisfied with the policy, and, Savery having in the meantime secured the agency for the appellant, Fidelity & Casualty Company of New York, negotiations were begun to secure a policy with that company.

Appellee testified that he told the agent, Savery, that he did not desire to drop the Aetna policy if his attack of influenza would affect his ability to secure a policy with appellant; that Savery told him he did not think it would make any difference, but he would consult appellee's physician about it. The agent, Savery, did consult appellee's physician about this attack of influenza, and, without further conference with appellee, he undertook to prepare an application for a policy. The application prepared by him contained no reference to the attack of influenza from which appellee had recently recovered, and it appears that in preparing it Savery copied the statements which appeared on the application previously used to secure a policy in the United States Fidelity & Guaranty Company; that portion of the application which is material here being as follows:

"I am in sound condition mentally and physically, except as follows: No exceptions."

"I have not been disabled nor have I received medical or surgical attention during the past seven years, except as follows: In January, 1918, for pleurisy (mild), lasting one week."

Appellee did not sign this application, never saw it before the policy was issued, and was not informed by the agent that it was necessary to make a written application. This unsigned application was made a part of the policy which was issued on March 1, 1920, and delivered by mail to appellee at Ocean Springs, Miss.

During the month of April, 1920, acting under the directions of his superior, appellee was again examined by a specialist in New Orleans, Dr. John B. Elliott. Dr. Elliott sent him to Dr. Adolph Henriques, an X-ray specialist, and they both testified that they found no evidences of tuberculosis.

On or about June 14, 1920, appellee was taken sick, and, his attending physician having some suspicions about the condition of his lungs, Dr. Henry Boswell, superintendent of the Mississippi State Tuberculosis Sanitorium, was called to examine him. Dr. Boswell made an examination on June 20, 1920, and pronounced him suffering from tuberculosis in both lungs. Thereafter he was under the treatment of and was examined by numerous physicians, some at the instance of appellant, others at the instance of appellee. The testimony of these doctors is conflicting. At least three who examined him in August, 1920, testified that he did not have tuberculosis at that time. Numbers of others testified that he was suffering from a pronounced type of tuberculosis and was wholly incapacitated. This testimony covered the entire period from June, 1920, to the date of the trial. It is unnecessary to here set out the testimony of this vast array of experts. It is sufficient to say that the chancellor found from the evidence that appellee was suffering from tuberculosis and was entirely incapacitated for the period of time covered by these suits, and the great weight of the evidence supports this finding of the chancellor.

The policy sued on contained the following provision:

"Article 17. This policy is issued in consideration of the premium charged therefor and of the statements made in the application, a copy of which is endorsed upon and is hereby made a part of this contract. The falsity of any statement in the application for this policy materially affecting either the acceptance of the risk or the hazard assumed thereunder, or made with intent to deceive shall bar all right to recovery under this policy. No provision of the charter or by-laws of the Company not included herein shall void the policy or be used in evidence in any legal proceeding hereunder."

The first ground upon which appellant seeks a reversal of this case is a breach of warranty on the part of appellee

regarding his previous medical or surgical attention and his condition of health.

The first statement in the application which is attacked by counsel for appellee is the characterization of the attack of pleurisy as mild. The chancellor expressly found as a fact that this statement in the application was not false, and, since there is ample testimony in the record to support the finding of the chancellor on this point, this contention is foreclosed by the decision of the chancellor. In the brief of counsel for appellant it is said, however, that if the question of the disclosure of the pleurisy attack be treated as foreclosed, the application still failed to disclose the fact that appellee had undergone physical examinations, one made in 1918 by Dr. George S. Bel, and one in 1920 made by Dr. T. F. Elkin, and also failed to disclose the fact that he had suffered an attack of influenza in 1920.

The question in this application which called for a disclosure of the medical or surgical attention which the applicant had received during the previous seven years did not require the applicant to list either of these examinations. The undisputed evidence shows that one of these examinations was a periodical routine examination which the appellee was required to undergo, and the other was an examination for life insurance, and, since the result of each of these examinations disclosed the fact that the appellee was in good health and physically sound, neither of them came within the meaning of the term "medical or surgical attention received" as used in the application.

The chancellor found and the proof clearly shows that appellee fully disclosed to appellant's agent the fact that he had recently suffered an attack of influenza. This agent consulted appellee's physician and secured full information in regard to this illness and as to the nature of the recovery therefrom, and advised appellee that this attack of influenza would not affect his ability to secure this health disability policy. With full knowledge of all the

facts, and without informing appellee that it was necessary for him to execute a written application, the agent took full charge of the preparation of the application. The appellee had no part in its preparation, was not called upon to answer any questions contained therein,. did not sign it, and had no knowledge of the fact that it had been prepared, and no opportunity to examine it until the policy was delivered to him. Appellee denied that he saw or read the alleged application which was attached to the policy, but appellant contends that, by accepting the policy, he was chargeable with notice of the contents of this application. Conceding that this is true, still, in view of the fact that appellant issued this policy on an unsigned application, and that the applicant was led by the agent of appellant to believe that the omitted information was not material, the appellant cannot defend on the ground that the application failed to disclose material information called for thereby.

In a number of cases in this state the doctrine is established that, if the agent of an insurance company undertakes the preparation of an application for insurance in his company, and by mistake or omission fails to furnish the required information, or suggests or advises what shall be answered, or what shall be a sufficient answer, the company cannot avoid liability on the policy because the answers are untrue, if full disclosures were made by the applicant to the agent. In *Planters Insurance Co. v. Myers,* 55 Miss. 479, 30 Am. Rep. 521, this court held:

"We adopt the doctrine of those cases which hold that, if the agent takes charge of the preparation of the application, or suggests or advises what shall be answered, or what will be a sufficient answer, the company shall not avoid the policy because they are false or untrue, if full disclosures were made by the applicant to him."

In the case of *American Life Insurance Co. v. Mahone,* 56 Miss. 180, this court said:

"If the agent of an insurance company undertakes the preparation of an application for insurance in his company, and, by mistake or omission, fails to write down correctly the applicant's answer to a question propounded, the company will be bound by such answer, just as if it had been written down in the language used by the applicant, and presented thus to the company for its action."

In *Mutual Reserve Fund Life Association* v. *Ogletree,* 77 Miss. 7, 25 So. 869, the Court held:

"If the agent of an insurance company be fully advised of the facts, and write or advise false answers to the inquiries contained in the written application, his principal cannot avoid the policy because of such answers."

In *Fraternal Aid Union* v. *Whitehead,* 125 Miss. 153, 87 So. 453, it was again said:

"It is the duty of an applicant for insurance to disclose all facts material to the risk, but, if he does so, and the agent of the appellant, acting within the scope of his powers, deemed these matters immaterial, and so writes the answers in the application for the applicant, the appellant would not be permitted to defend on the ground that the answers were not true within the literal meaning of the words used in the application."

The application of this doctrine, however, is subject to the necessary qualification that the assured must have acted in good faith, and must have been free of fraudulent concealment or collusion with the agent of the company, and this brings us to the consideration of the second ground upon which appellant seeks a reversal of this case, which is that "appellee was guilty of gross fraud and deception, and is not entitled to recover in a court of equity, regardless of any notice or knowledge by the broker Savery."

The question of appellee's good faith was submitted to the chancellor, and in passing upon the facts in evidence he found expressly that the appellee was guilty of no fraud, but had acted in good faith throughout. We think there was ample evidence to support this finding of fact,

and that it cannot be said that the decision of the chancellor on this point is manifestly wrong. As said in *Aetna Insurance Co. et al.* v. *Robertson* (Miss.) 94 So. 7:

"It is established by an unbroken line of decisions in this state that a decree of a chancellor based on facts will not be reversed on appeal unless this court is convinced that the chancellor, in the rendition of the decree, made some material mistake in construing the law applicable to the case, or that the decree is opposed to the great weight of the testimony, or that the decree is without evidence to support it, or, as most frequently expressed, that the decree is manifestly wrong. On appeal to this court, on all questions of fact, the inquiry is not whether the chancellor's decision is right, or whether, on the facts, this court would have reached a different conclusion, but whether from all the facts, and the reasonable inferences to be drawn therefrom, the decree is manifestly wrong"—citing authorities.

Finally, it is contended by appellant that appellee's recovery, if any, should be confined to the actual time he was under the care of physicians, and that the evidence failed to show that appellee had been under the care of physicians for the entire period of time covered by these suits. The chancellor, in his opinion, considered this exact point and held that the evidence showed that appellee was under the care of physicians from June 14, 1920, to November 28, 1921, the exact period of time covered by the three suits now before us. This was a question of fact to be decided by the chancellor on conflicting testimony, and, since we are unable to say that his decision is manifestly wrong, the decree of the court below must be affirmed.

One branch of this case has been previously before this court (*Fidelity & Casualty Company of New York* v. *Cross*, 127 Miss. 31, 89 So. 780), and it was there held that, under the provisions of section 2606, Code of 1906 (section 5069, Hemingway's Code), service of process on the insurance commissioner was sufficient and would support a judg-

ment by default against the defendant, and counsel for appellee has now raised the question as to whether, in view of the former decision, the suit in equity to enjoin the execution of the judgment at law, which was affirmed in the former suit, can be maintained. It is unnecessary, however, for us to decide that question, since the views herein expressed lead to an affirmance.

*Affirmed.*