## Sovereign Camp, W. O. W., v. Alcock.

(Decided May 27, 1938.)

PRINCE & COX and RAINEY T. WELLS for appellant.
HOLLAND G. BRYAN for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER——
Affirming.

Appellee, stepmother of Wilford Alcock, was bene-
ficiary in a $1,000 certificate of life insurance issued by
appellant. Application for the certificate was made by
deceased on September 22, 1933, and certificate issued
October 16, 1933. The insured died February 18, 1935.

It is admitted by insurer that it received proofs of death and claim, but it denied liability, and later defended an action, solely on the grounds that in the application, deceased had made false answers to material questions, but for which the certificate would not have been issued. The said alleged false statements were shown in the application as follows:

"6. Are you now in good health. Ans. Yes."

"8. Have you within the past ten years suffered any mental or bodily disease or infirmity? Ans. No."

"11. Have you within two years occupied the same room or house with a consumptive? Ans. No."

Emphasis is placed by appellant on the answers to questions 6 and 11, it being contended, and it is pleaded, that applicant, within two years, had lived in the same house with his father, who at the time of the statement was afflicted with tuberculosis, from which disease the father died in April, 1932. The second contention, properly pleaded, relates to cancellation upon failure to pay dues, and reinstatement of insured. It was specifically pleaded by appellant that by the application, the contract, constitution and laws of the association, which are admitted to be part of the contract, the statements made on application were not only warranties upon which the certificate was to issue, but same applied with like force to reinstatement of a member who had defaulted in payment of dues, which default operated to automatically void the contract.

It was contended in the pleading that dues, which were to be paid on the first of each month, were not paid for March, April and May, 1934, and insured was automatically suspended. On the 4th of June, 1934, the default payments were made, and accepted by the insurer. The same situation arose as to dues for June and July of 1934, which were not paid until August 13th, the insurer receiving and retaining same under the terms and conditions set out in its constitution and laws, but with regard to both reinstatements, contending that applicant was not in good health at the times, nor for thirty days thereafter.

Upon completion of the issues, hearing of the proof, and instructions by the court, the jury returned a verdict in favor of appellee for $996.71, the court

evidently, in instructing the jury, deducting from the face of the policy the dues, for which check had been returned to the beneficiary, but which she rejected in pleading, but did not return.

Appellant's answer drew replies, which in the main denied the allegations of the answer. With respect to answer to No. 11, it was specifically pleaded that it was expressly stated to the representative of defendant that the father of insured had been dead for some time; had died of tuberculosis, and it was so written in the application. Further, that the representative of the insurer was informed by the applicant that he had been living in the same house with his father, and if misstatement appeared in the application it was by the voluntary act of insurer, by and through its agents, thus constituting waiver.

In appellee's brief we note that it is admitted that dues for the three spring months in 1934, and June and July of the same year, were not paid until June 4th and August 13th, respectively, but the same were received and retained by the insurer until the death of the insured. It is admitted that the father of deceased died of tuberculosis in April, 1932, and that insured died of the same disease in February, 1935; that the insured for some time prior to the death of the father occupied the same house with him.

Appellee also says there is no dispute with appellant as to its contention that under the provisions of the contract and appellant's laws, when a lapse occurred in payment of dues the insured is not reinstated upon the payment of such lapsed dues, "unless at the time of such payment the assured was in good health," but contends the proof does not show that applicant was not in good health at the reinstatement dates.

In the instant case the deficiency of proof suggested in the case of Sovereign Camp, Woodmen of the World, v. McDaniel, 251 Ky. 212, 64 S. W. (2d) 581, was fully met by sufficient proof, establishing that the general practice would have been under the circumstances, not to issue this policy. However, the difficulty here arises from an application of the facts bearing on the questions discussed.

Appellant argues that the court erred in not sustaining its motion for a peremptory, or that failing in

this, it should have determined, and we should now hold, that the verdict of the jury was flagrantly against the evidence.

Without attempting to separate the evidence with relation to the state of health of insured at the time or times of his reinstatement, or that with respect to his answer to question No. 11, we shall give, substantially, such as bear on both propositions, keeping in mind the various pertinent dates, as follows: Application, September 22, 1933. Policy issued October 16, 1933; first alleged reinstatement June 4, 1934; second, August 13, 1934. Date of death of father, April, 1932; death of insured, February 18, 1935.

Mrs. Feezor testified for appellant that she lived within a quarter of a mile of the home of the insured and his father. The son lived in the same house with the father. After the son became ill witness was with him quite frequently, but seemed unable to tell just how long he was ill, or confined to his bed.

Mrs. Greenville Lawrence testified that she lived near the home of the father and son. The father was sick for a while; she does not say how long. The son lived in the home with the father.

J. E. Kortz was deputy banker of the local camp of the W. O. W. during 1932 and through 1934. His duties were to "receive applications and write all of the insurance we could get." He took the application of deceased and filled in the answers to all the interrogatories. He asked him these questions, and to No. 6 applicant answered "Yes," and No. 8, "No." When he asked him question No. 11, the applicant answered, "Not in the same room, but have been living in the same house," and witness says he then put down the answer "No," because applicant had said he had not occupied the same room. This witness knew the father, who had also been a member of the W. O. W.; knew that he was dead, and had died of tuberculosis, and he so wrote in the application under the words "cause of death." He further said that applicant did not read the application after he had filled it in. Witness also collected the delinquent assessments of June and July in August, when assured "was out in the field working and his wife called him in, and he appeared to be in good health. If I had known he was sick I would not have reinstated him."

The beneficiary (appellee) was called by appellant and testified that she lived with the father about thirteen years. The stepson was about five or six years old when they married. She admits that the husband, and father, died of tuberculosis in 1932. The son lived at home with them, and was living there on September 22, 1933. He and his father ate at the same table when the father was able to come to his meals, "but never ate from the same dishes. I was his nurse. Wilford had a separate room, and I took every precaution that I could. He did the chores, but never waited on his father. The doctor said they both died with tuberculosis."

Mr. McMahan, an inspector for a credit company, and who made frequent inspections for insurance companies, was called to identify a report he made to appellant at its request, after the filing of notice and claim. He says he received the information contained in the report from appellee; put it down, read it to her and she signed it. This statement will be referred to later, as it was filed on the trial.

Dr. T. W. Little, who qualified to some extent as a specialist in the treatment of tuberculosis, was asked the following question:

"If a person died of tuberculosis February 18, 1935, and had been living with his father prior to that time, who himself died with tuberculosis in the Spring of 1932; had eaten at the same table with him, and some time in the fall of 1934 was compelled to consult a doctor, and in the summer or fall of 1934 had a hemorrhage from the nose, state whether or not that person had tuberculosis on June 4, 1934, and also on August 13, 1934."

To this question the doctor answered: "I would think he had tuberculosis."

He said that the disease was usually contracted by one living in the same house with a person afflicted.

Referring now to the statement written by Mr. McMahan, we find the following contained therein: The wife of insured stated that the insured went to Dr. Bradley's office some time in May, 1934, to be treated for chills and fever. While waiting for Dr. Bradley he had a hemorrhage from the nose. He had no other doctor, except Dr. Robinson, who visited him

a few weeks before he died. The insured began feeling bad in April, 1934, but never became ill to the extent that he had to quit work or go to bed. When he began to feel bad in April, she suspected that he might have contracted "T. B." from his father, because he had lived with the father during the time he had the disease and had eaten at the same table and had used the same dishes.

The mother's statement was substantially as follows: Wilford had lived with his father about fifteen years. The father died of tuberculosis of the throat, from which he suffered three or four years. "I took every precaution to keep him from getting the germ, and had separate dishes for his father. He did not sleep in the same room and did not use the same covers. The only possible way he could have contracted the germ is by smoking cigarettes his father had thrown away. In September, 1934, he told me he was bilious, but received no medical attention. Late in the fall of 1934, we decided he had tuberculosis.

The wife testified that her husband did his regular farm work, raising strawberries and a corn crop, through 1934. That he was not under the care of a doctor until December, 1934. She was shown the report made by Mr. McMahan to the appellant, which she said she had seen, but never read. She denied all of the statements save the one, "his father died last April, three years ago." She said it was read to her, "but it did not sound like that or I would not have signed it." Dr. Bradley does not bear out the statement that insured visited him in the spring.

Appellee testified that Wilford "took sick" about two weeks before he died. "His nose was bleeding a little." This appears to have happened during the December visit to Dr. Bradley. When he made application for the policy "he seemed to be in perfect health." He did not complain in 1933, and worked his strawberry crop in 1934.

Mrs. Kroner testified that deceased lived on her farm in 1934. In the spring he helped with the berries, and put out a corn crop. He worked in the berry crop through May to the middle of July. She did not hear him complain about feeling bad until about the 1st of December.

Dr. Bradley saw deceased in the fall of 1934; he diagnosed the trouble as malarial fever. He did not think the patient had tuberculosis at that time. He came to his office late in December. He had a hemorrhage and was spitting blood. He treated him for malaria.

Dr. Cloyd (for defendant) who had never seen the insured was asked the following hypothetical question:

"If during the months of April or May, 1934, Wilford Alcock was suffering from a disease he thought to be malaria and chills * * * and called upon a doctor to be treated therefor, and at that time suffered a hemorrhage of the lungs, and died February 18, 1935, after having been confined to his home and bed for two months or more, in your opinion was he suffering from pulmonary tuberculosis on the 4th of June and 13th of August, 1934?"

The doctor answered:

"Assuming the facts set out in the interrogatory to be true, I am of the opinion that Wilford Alcock was suffering from pulmonary tuberculosis on the dates mentioned, and could not have been in good health on the dates named and under no circumstances would a medical director have passed him for insurance in any company."

We need not reiterate the testimony, but upon consideration thereof conclude that the proof was sufficient for the upholding of the verdict. The appellant failed to overcome appellee's proof, such as it was, by testimony of real probative value. It is true that Dr. Cloyd, and the other physician, gave answers to the hypothetical question propounded, and the testimony is treated with great respect. However, we find difficulty in endeavoring to conclude that it was all-sufficient to determine the matter of the condition of the health of the insured at the times of the admitted reinstatements.

It is noted that the answer to the hypothetical questions were based on assumed facts, that "Wilford Alcock suffered from a disease in April or May, 1934, which he thought to be malaria and chills * * * and had a hemorrhage of the lungs," in the summer or fall of 1934, "while in the physician's office, and his health continually failed thereafter."

Eliminating the wife's statement made to McMahan, there is no proof that such condition existed prior to the fall or late winter of 1934, after the reinstatement of insured. The record does not show when the deposition of Dr. Cloyd was taken, but the question to him was apparently based on the statements alleged to have been made by the widow. The widow denies having made such statement, and she and the stepmother testify that there was no visit to a physician in the spring of the year, and that the hemorrhage occurred during the December visit. In this they are borne out by the physicians. The hypothetical question should have been based on proven facts. The statement, as introduced, could have no more effect on the trial than to serve to attack the credibility of the widow's testimony. We have held that the hypothetical question, in order to be received as competent testimony, must be based so as not to include facts not shown by the testimony to have existed, nor fail to include any relative fact shown by some of the testimony to have existed. Kentucky Traction & Terminal Company v. Humphrey, 168 Ky. 611, 182 S. W. 854; New York Life Insurance Company v. Long, 211 Ky. 656, 277 S. W. 978; Cincinnati, N. O. & T. P. Railway Company v. Duvall, 263 Ky. 387, 92 S. W. (2d) 363.

Conceding, however, that the answer by Dr. Cloyd was competent, and in reply to a competent question, we are still of the opinion that this issue was one of fact, solely for the consideration and final determination of the jury, and since there was some evidence upon which its verdict might be reasonably predicated, we are not at liberty to disregard it. Columbia Life Insurance Company v. Tousey, 152 Ky. 447, 153 S. W. 767; National Protective Legion v. Allphin, 141 Ky. 777, 133 S. W. 788.

On the last contention we find that there is intimation that Kortz was not such an agent of the insurer as would permit him to bind insurer by his acts in the instant case. This argument may be answered by reference to Continental Casualty Company v. Linn, 226 Ky. 328, 10 S. W. (2d) 1079; Mutual Benefit Health Association v. Smith, 257 Ky. 288, 77 S. W. (2d) 957; Sun Indemnity Company v. Hulcer, 251 Ky. 484, 65 S. W. (2d) 471. Further, we note that in the pleadings, including final answer and rejoinder, there is no specific denial of agency.

It is ably argued that under the particular contract here in question, insurer was bound by the answers included in the application, because of the terms of the contract, by-laws and constitution of insurer. We have not overlooked the fact that in the application the insured warranted the statements contained therein to be true, "whether written by my own hand or not," and we have read with some respect the cases cited, holding that the insured is thereby bound strictly to the terms of the warranty or representation. Sovereign Camp, Woodmen of the World, v. Newberry, Tex. Civ. App., 87 S. W. (2d) 839; Fidelity & Casualty Company v. Cross, 131 Miss. 632, 95 So. 631. In the light of the many decisions of our court holding the insurer bound by the act of the agent, acting within the scope of authority, we cannot go to the length of holding that the insurer would be allowed to avoid its obligation, where the act upon which avoidance is sought, be the act of the company, through or by its agent.

In Metropolitan Life Insurance Company v. Trunick's Adm'r, 246 Ky. 240, 54 S. W. (2d) 917, it appears that upon a former trial (229 Ky. 173, 16 S. W. 759) there had been a defect in the pleadings which was cured on the second trial. In the latter case the precise question was presented, and though reversing same, we went thoroughly into the question here under discussion, and held the law to be that in the case of insurance contracts it is the fixed rule that the insurer will be estopped to deny liability on a policy if its agent inserts false statements in the written application, or by misleading statements induces the insured to make false answers, if the insured is acting in good faith. Provident Life & Accident Insurance Company v. Parks, 238 Ky. 518, 38 S. W. (2d) 446; Standard Auto Insurance Association v. Russell, 199 Ky. 470, 251 S. W. 628; Aetna Life Insurance Company v. McCullagh, 185 Ky. 664, 215 S. W. 821; Hartford Insurance Company v. Haas, 87 Ky. 531, 9 S. W. 720, 10 Ky. Law Rep. 573, 2 L. R. A. 64.

We quoted from the Park's Case, supra, and we quote here, as being applicable (page 448):

"The question, so presented, was before this court in the recent case of Metropolitan Life Insurance Company v. Trunick's Adm'r, 229 Ky. 173, 16 S. W. (2d) 759. That opinion cited two prior

744

ones from this court to the same effect, and which are: Standard Automobile Insurance Association v. Russell, 199 Ky. 470, 251 S. W. 628, and Standard Automobile Insurance Association v. Henson, 201 Ky. 230, 231, 256 S. W. 414. It was held in those cases that under facts similar to those we have here the insurer was estopped to rely upon the false representations contained in the application executed under such circumstances, unless the insured in some manner participated therein so as to bring the case within the doctrine of the Spears [Com. Life Ins. Co. v. Spears, 219 Ky. 681, 294 S. W. 138], Henson, and other opinions from this court holding that, if the application was the result of a fraudulent collusion between plaintiff and defendant's agent, and it contained material and fraudulent representations, the company would not be estopped to rely thereon as a defense to an action on the policy based upon such collusive application.

"In this case no defense of that nature was made, nor did the proof sustain it, if it had been made, and, therefore, the principles of those cases upon which counsel seems to rely have no application in this case. On the contrary, the case is governed by the opinions in the Trunick, Henson and Russel Cases supra, and, since the instruction complained of followed those opinions, the court did not err in refusing defendant's offered peremptory instruction, nor in submitting the estoppel issue to the jury which it did, as we have seen under an appropriate instruction."

In the instant case we are of the opinion that appellant was not entitled to have the court sustain its motion for a peremptory, and as was done in the case quoted above, the court here by appropriate instructions, submitted upon this issue, and upon the other issue, gave what appears to have been eminently fair instructions. Therefore, for the reasons set out we conclude that the verdict of the jury should not be disturbed.

Judgment affirmed.