**WATTS & WILLIAMS DRILLING COMPANY, Appellant,**

v.

**Versie SLONE, June Carol Slone, Robert Lee Slone and Workmen's Compensation Board of Kentucky, Appellees.**

Court of Appeals of Kentucky.

Feb. 21, 1969.

J. W. Craft, Jr., Craft & Haynes, Hazard, for appellant.

Grayson Johnson, Hindman, J. Keller Whitaker, Workmen's Compensation Bd., Frankfort, for appellees.

WADDILL, Commissioner.

In proceedings before the Kentucky Workmen's Compensation Board the appellees, dependents of Devoe Slone, deceased, obtained an award of compensation dependency benefits against appellant, Slone's former employer. The only finding of the board that is in question is the finding that "plaintiffs' [appellees] decedent sustained a traumatic personal injury in the course of his employment with the defendant [appellant] on June 24, 1967, and that there existed a causal connection between his injury and subsequent death." The finding and award was upheld on the appeal to the Knott Circuit Court and its correctness is now being questioned by an appeal prosecuted to this court.

■ It is argued for reversal that there is no competent, reliable and material evidence in the record to support the above quoted finding of the board. Under the provisions of KRS 342.285(3) (d) the scope of our review in this case is limited to whether the "order, decision or award is clearly erroneous."

On June 24, 1967, Devoe Slone, who at that time was an employee of the appellant, sustained a work-connected injury to his back. Thereafter during Slone's lifetime appellant voluntarily paid him weekly compensation benefits on account of his disability.

On August 29, 1967, Dr. R. J. Angelucci operated on Slone and removed a protruding disc from the right L–5 interspace. Slone's postoperative course was described by Dr. Angelucci as "good." Slone returned to his home on September 24, 1967, and apparently was making a normal recovery until he suddenly died on the night of October 1, 1967.

Dr. Angelucci testified that when he examined Slone during Slone's convalescence he found no swelling in Slone's legs or any evidence of a blood clot or any other complication from the disc operation. It was Dr. Angelucci's opinion that Slone died from a coronary attack and that it was highly improbable there was any connection between Slone's operation and his death. When asked whether Slone was complaining of tenderness or swelling in his left ankle or thigh when he was last examined on September 15, 1967, Dr. Angelucci responded in the negative. However, when asked a hypothetical question that contained some of the symptoms that Slone had manifested after his operation, Dr. Angelucci responded that he could not rule out a pulmonary embolism as the cause of Slone's death.

Slone's wife testified that prior to his back injury Slone was able-bodied, regularly employed to perform manual labor, and that his only ailment was asthma. Mrs. Slone stated that following the operation Slone was very weak, had pain in his back and legs, stayed in bed most of the time and used crutches to assist him in walking.

Mrs. Slone described the events preceding his death, thusly:

"Q.33 Now, Versie, on the day of Devoe's death, would you tell the Board what transpired there that day, and what you saw Devoe do. Just go ahead and tell the Board.

"A. Well, he took his exercises. Then, after he took his exercises, he commenced complaining. * * *.

"Q.34 Don't tell what he said. Just tell what you saw that went on there—what you saw, and what happened there.

"A. Well, all right. His back went to hurting him and he quit. He didn't take all of his exercises, so he went on in there and laid down in the bed—

"Q.35 Went on where—on the bed?

"A. On the bed, yeah, in the bedroom, and he just kept saying he was feeling bad—

"MR. CRAFT:

"Object

"REFEREE:

"Sustained. Don't tell what he said.

"Q.36 Just tell what you saw and observed.

"A. Well, I'm sorry. He was feeling real bad, and then later on in the night—I wouldn't know exactly the time, but he started vomiting, and his back was jerking and the muscles in his back, and I got up, and where he had vomited, he had vomited all over his clothes, and his muscles all back in his back was jerking, and I helped him change his clothes, and he said: 'Well, I'm going to die if I don't get a doctor—'

"MR. CRAFT:

"Object

"REFEREE:

"Sustained.

"(To which ruling of the Referee, Counsel for the Plaintiff excepts).

"Q.37 Now, don't tell what he said. Just tell what you saw there, Versie.

"A. Well, then I run off the hill to get a doctor, and when I come back he was already dead.

"Q.38 And you say you helped him change his pajamas?

"A. I helped him get his pajamas on before I went, and he was jerking all over in his back, and the muscles in his back, before I went off the hill. I run to get a doctor, and before I got back he was dead."

Dr. D. G. Barker, who was described by Mrs. Slone as their family physician, signed Slone's death certificate. Dr. Barker stated that the immediate cause of Slone's death

was "coronary thrombosis with massive myocardial infarction." In answering the question as to whether there were "contributing causes" he stated:

"(b) Coronary arteriosclerosis, approximate interval between onset of death—five hours. Approximate date the patient had been suffering from this condition—3 to 4 years."

Dr. Barker further stated in the death certificate that he had been Slone's family physician from July 30, 1954 to October 1, 1967.

The only expert witness introduced in behalf of the appellees was Dr. Allan Zoeller, an orthopedic surgeon. Dr. Zoeller had never examined nor even seen Slone. To a hypothetical question seeking his opinion as to the cause of Slone's death, Dr. Zoeller responded as follows:

"It's my opinion that with swelling in his left leg, tenderness in his calf and thigh, both of which are quite characteristic of a phlebothrombosis, or a clot forming in the vein of his left leg. That this patient did develop some blood clots in the veins of his left leg as a complication of the surgery, and a piece of this clot broke loose and went to his lung, we call this a pulmonary embolism, causes the lungs to go into spasm, the great vessels in the lungs to go into spasm, causing death. And, that in my opinion would be the most likely cause of death.

"It could be some other things, but fitting the swelling in the leg and the tenderness in the calf together with this sudden onset of chest pain with fairly rapid demise, it all seems to fit together to me, as a case of pulmonary embolism."

Appellant contends that the only testimony that tends to show a causal connection between the injury and the death is contained in Dr. Zoeller's response to the hypothetical question and that this testimony was incompetent (and objected to) because the hypothetical question was not based on facts in evidence. There is merit in this contention. Sonne v. Booker, Ky., 310 S. W.2d 526; Sovereign Camp, W. O. W. v. Alcock, 273 Ky. 734, 743, 117 S.W.2d 938. However, neither the board nor the appellees rely entirely upon Dr. Zoeller's testimony.

Apart from Dr. Zoeller's testimony, the board was of the opinion that the facts justified the application of the rule announced in Ellis v. Litteral, 296 Ky. 287, 176 S.W.2d 883, that, where death follows soon after the injury of an able-bodied man, a presumption arises that the death was caused by the injury in the absence of other than conjectural testimony to the contrary.

Appellees take the same view as did the board and urge that the sequence of events, i. e., Slone's injury, his operation and his subsequent death, raised a presumption, which appellees maintain was not rebutted, that Slone's death resulted from his injury. Appellees contend that in these circumstances the board's finding that Slone's death was caused by his injury was sufficiently supported. Appellees rely on Blue Diamond Coal Co. v. Gayheart, Ky., 355 S.W.2d 145, and other similar cases to support their position.

The fallacy of this contention is at least twofold. First, the facts in the cases relied upon are dissimilar to those in the instant case. In the cases relied on, from the time of the injury continuously until the time of death the injured employee grew steadily worse and there was no evidence of an intervening cause, where in the instant case Slone was having a normal recovery from his injury and operation and there was also substantial evidence that his death resulted from an intervening cause. Secondly, the alleged presumption upon which appellees rely was rebutted by medical experts who were in possession of the pertinent facts.

The medical experts above referred to are Dr. Angelucci and Dr. Barker. Their testimony must prevail unless there is acceptable evidence produced by appel-

lees that will sustain their burden of proof. No such evidence was produced. Dr. Zoeller's opinion based on his own conclusion that Slone had experienced an onset of chest pains before he died was too speculative to have any probative value. It appears that Dr. Zoeller was not furnished the information that is necessary for an expert to reach an acceptable conclusory opinion concerning the cause of Slone's death. The competent evidence in the case casts no doubt upon the opinions of Doctors Angelucci and Barker and therefore the board must accept them as the cause of Slone's death. The board's finding to the contrary was clearly erroneous.

The judgment is reversed with directions to the circuit court to set it aside and to remand the case to the board for the entry of an order dismissing appellees' claim for compensation.

All concur except EDWARD P. HILL, J., who dissents.