CASE 36.—ACTION BY CONRAD SCHILDKNECHT AGAINST
THE PELICAN ASSURANCE COMPANY OF NEW
YORK ON A CONTRACT OF FIRE INSURANCE.—
March 11.

# Pelican Assurance Co. of N. Y. v. Schildknecht

Appeal from Jefferson Circuit Court (Chancery
Branch, First Division).

SHACKELFORD MILLER, Judge.

Judgment for plaintiff.   Defendant appeals.—Affirmed.

1. Insurance—Fire Insurance—Existence of Contract—Evidence
—Evidence examined, and held to show that on the day on
which buildings were destroyed by fire, and prior to the loss,
plaintiff, the owner, entered into a parol contract with the
agent of defendant insurance company, whereby it was agreed
that the buildings should be insured from that time in defendant company.

2. Same—Premiums—Payment.—Where an insured has a running
account with an insurance agency with whom he settles his
insurance premium accounts from time to time as called
upon to do so, a policy of insurance taken out by him through
the agency is not invalidated because the premiums were
not paid when the policy was taken out, but insured is
entitled to pay upon demand only.

3. Same—Power of General Agents.—A general agent of an in-
surance company has authority to bind the company by his
acts, to the extent of modifying or varying the terms and
conditions of the policy, which would, in the absence of such
waiver, operate as a forfeiture.

4. Same—Liability for Acts of Subagents.—Where a general
agent of an insurance company employed a subagent as an
"outside man" to solicit applications, receive premiums, and
deliver policies, and he was the only man with whom the
public came into contact, and, so far as the public could

know, had full power to represent the company in all matters pertaining to insurance, a person who is induced by him to take insurance may, in the absence of notice to the contrary, regard him as an agent of the company, with authority to bind it.

C. H. SHIELD and GEO. CARY TABB for appellant.

## PRINCIPLES AND AUTHORITIES RELIED UPON BY APPELLANT.

1. Contract must be complete and definite. "But to entitle one to the specific performance of a verbal agreement to insure, or to issue a policy, he must prove an oral contract of insurance, namely, the subject-matter, the risk insured against, the amount of insurance, the rate of premium, the duration of the risk, and the identity of the parties. If the application be made to an agent representing several companies the particular company or companies to carry the risk must be designated with the amount each is to carry, and each must, by its agent or otherwise, agree to assume liability upon the terms and conditions proposed and acceded to by the applicant. Until this is done there can be no binding contract. And it must also appear that the agent had authority to bind the company sought to be held to the payment of the risk." (Hartford Fire Insurance Co. v. Trimble, 78 S. W., 462, 25 Ky. Law Rep., 1497; Citing Kerr on Insurance, pp. 57, 46 and 60; Pomeroy's Equity Jurisprudence, 1405; Fowler v. Lewis, 10 Ky., 443, 445; Ray v. Talbett, (Ky.) 64 S. W. 834, 23 Ky. Law Rep., 527; See also Cooley's Briefs on Insurance, vol. 1, p. 368, citing many cases, among them: Johnson v. Conn. Fire Ins. Co., 84 Ky., 470, 2 S. W., 151; Piedmont & Arlington Ins Co. v. Ewing, 92 U. S., 377; Hartford Ins. Co. v. Trimble (Ky.) 78 S. W., 462, 117 Ky., 583; Kimball v. Lion Ins. Co., (9 C. C.) 17 Fed., 625.)

2. Evidence must be conclusive. "To be enforced either at law or in equity a contract must be definite. This requisite is especially insisted upon when specific performance is sought, and specific performance may be refused even though damages may be obtained at law." (Page on Contracts, 1609.)

"Where plaintiff seeks to establish by evidence of an oral contract his right to a policy, the evidence must be clear and conclusive to support a decree in equity." (Cheney v. Phoenix Ins. Co., 62 Mo. App., 45; citing McCann v. Ins. Co., 3 Neb., 198; Suydam v. Ins. Co., 18 Ohio 459; Nellville Ins. Co., 19 Ohio, 452.)

"In an action to inforce a parol contract of insurance, proof

Pelican Assurance Co. of N. Y. v. Schildknecht.

must be clear that such a contract was actually made. The action, it is said, cannot be maintained if there is a doubt of the matter upon the evidence as a whole." (Elliott on Evidence. vol. 3, p. 2313; See also 2nd Parsons on Contracts, 351.)

3. Soliciting agent cannot make binding contract. "It is undoubtedly a general rule esatblished by authority that a solocit ing agent has power only to receive and forward applications and cannot bind the company by an acceptance of the risk.' (Cooley's Briefs on Insurance, vol. 1, p. 418.)

"An agent whose powers are limited to receiving and forward-ing applications for insurance, cannot make a contract binding on the company." (Cooley's Briefs on Insurance, vol. 1, p. 347; citing Greenwich Ins. Co. v. Waterman, 54 Fed. 839; ———U. S. Appeal 549; Winnesheik Ins. Co. v. Holgrafe, 53 Ill., 516; Phoenix Ins. Co. v. Wilkes & Co., 10 Ky. Law Rep., 283; Eaden v. Farmers & Mich. Assn., 80 Va., 683.)

"In accordance with the foregoing principle is the rule that though a solicitor of risks is, in a certain sense, an agent of the company, no binding contract can be made with him." (Cooley's Briefs on Insurance, vol. 1, p. 347; citing among others Embree v. German Ins. Co., 62 Mo. App., 132; Haskin v. Agricultural Fire Insurance Co., 78 Va., 700.)

4. "One contracting with an agent, apparently having but limited authority is bound to inquire as to and take notice of the limitation imposed by the company on his authority to act for it." (22 Cyc., 1433 (C).

5. A local agent without express authority to appoint a sub-agent cannot delegate powers requiring exercise of discretion. "An agent, without express authority to appoint a subagent can-not make another an agent of the company by agreeing without the company's knowledge, to divide commissions with him on insurance procured." (Joyce on Insurance, vol 1, p. 396; citing Phoenix Ins. Co. v. Spiers, (Ky) 8 S. W., 453, 57 Ky., 286.)

"So an agent in whom is vested discretionary power cannot delegate his authority except under an express grant of authority, therefore, a general agent, whose power in issuing policies of insurance calls for the exercise of discretion, cannot delegate the same to another, nor can an agent delegate the power to counter-sign policies where he is an agent to issue policies which are not to be valid till countersigned." (Joyce on Insurance, vol. 1, p. 396. Citing for the last statement Lynn v. Burgoyne, 13 B. Monroe (Ky.) 400; Copeland v. Merchantile Ins. Co., 6 Pick. (Mass), 198, 203.)

Pelican Assurance Co. of N. Y. v. Schildknecht.

D. R. CASTLEMAN and WALSH & WALSH for appellee.

POINTS AND AUTHORITIES CITED.

1. Oral contracts of insurance are valid.    (Security Fire Ins. Co. v. The Kentucky Marine, 7 Bush, 81; Hartford Ins. Co. v. Trimble, 25 Ky. Law Rep., 1497; National Fire Ins. Co. v. Rowe, 20 Ky. Law Rep., 1473; Fidelity & Casualty Co. v. Ballard & Ballard, 20 Ky. Law Rep., 1169; Howard Ins. Co. v. Owens, 94 Ky Law Rep., 198.)

2. Acts of agent or sub-agent bind principal.    (Citizens Ins. Co. v. Henderson Elevator Co., 29 Ky. Law Rep., 976; Joyce on Ins., vol. 1, sec. 396, also sec. 411; 17 U. S. C. C. A., 608; Kentucky Statutes, sec. 633.)

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Conrad Schildknecht is a contractor and builder in Louisville, Ky. R. O. Breuer & Co. are general agents of appellant, the Pelican Assurance Company of New York, doing an insurance business in Louisville, Ky. On the 28th of August, 1905, appellee notified Breuer & Co. by telephone that he desired to have them insure three frame dwelling houses on Dupue street, in Louisville, which he was erecting.   Some one in the ooffice of Breuer & Co. answered this telephone call, and stated to appellee that as the houses were not numbered, and the lots upon which they were being erected were not numbered, they would have to send a representative out to locate them.   This arrangement was satisfactory to appellee.   About 5 o'clock on the afternoon of the day following Mr. Julius Bolling, representing Breuer & Co., went out and viewed the houses.   At the time he reached these buildings appellee and his brother were both there, and appellee and Bolling agreed that the houses were to be valued at $600 each, and insured for that amount for 40 days for $2 each.   On the night of the same day, at about

10 o'clock, two of these houses were burned. Appellee alleges that Bolling agreed that the houses should become insured from that time, to-wit, about 5 o'clock in the evening of the 20th of August, in the appellant company, the Pelican Assurance Company of New York. After the houses were burned, the appellant company, through its agent, Breuer & Co., denied that the buildings had been insured, and refused to pay for same. Thereupon appellee sued appellant for $1,200, the value of the two houses which were burned, and, upon final hearing, was awarded judgment for the full amount sued for.

Upon this appeal two questions are presented for our consideration: First Did appellee and Bolling agree that the two buildings should be insured in the appellant company? Second. Did Bolling have the authority to make the contract of insurance if they did so agree?

On the first question appellee and his brother both testify positively that it was agreed between appellee and Bolling that the buildings in question should be insured in appellant company. This Bolling denies. After the buildings had been inspected by Bolling and the conversation above referred to had taken place, appellee and Bolling repaired to the liquor emporium of one Henry Lammers, and while there, according to the testimony of Mrs. Lammers, Mr. Bolling said that appellee's buildings were insured all right from that day. It seems that on his way out to inspect the buildings and locate the property Bolling had stopped in Lammers' place of business, and had a conversation relative to this insurance with him. Bolling admits being present and talking to Lammers, but denies that he said that appellee's property was insured from that date. The weight of the evidence shows that

Bolling agreed to insure the houses in question from the 29th of August, 1905. The record shows that Breuer & Co. were the general agents for several insurance companies, and the witness Bolling testifies that, when receiving applications for insurance, it was his custom and duty to send them to the agency, and that Mr. Breuer determined in what company they should be written, and that he is positive that on the day in question he made no statement whatever as to what company appellee's houses should be insured in. As opposed to this testimony of Bolling, both appellee and his brother testify that the contract as entered into on the 29th of August was for the buildings to be insured in the appellant company. As above set out, the application was for insurance covering three buildings, but two of them burned, and later the third house, which did not burn, was insured through the Breuer agency in appellant company. The uncontradicted evidence shows that Mr. Bolling had receipted for Breuer & Co. for still other policies in appellant company issued to appellee on other buildings. Now, while it is true that Bolling denies that he had any authority to contract for the insurance, or to designate the company in which it was to be placed, or that he did so, nevertheless the preponderance of the evidence and the circumstances surrounding the transaction between Bolling and appellee show that he did make the contract as alleged by appellee, that he had theretofore insured buildings for appellee through the Breuer agency in appellant company, and on the very day that he went out to inspect the buildings in question he had receipted to appellee for another policy in the same company. The premium for this insurance was not paid in cash on the 29th of August, at the time the agreement relative thereto was made and

entered into, but it is shown that appellee had an open insurance account with Breuer & Co., and that statements were rendered by these general agents at stated intervals to their customers, one of whom was appellee. No question is seriously made in this case that the premiums were not paid in cash, but were to be charged to his account as was their custom in the conduct of their business.

The evidence supports the contention of appellee that on the 29th of August he entered into a parol contract with the agent Bolling, by the terms of which it was agreed that the three buildings above referred to should be insured from that time for a period of 40 days in the appellant company for a premium of $2 each; that appellee had a running account with the Breuer agency, with whom he settled his insurance premium accounts from time to time, as called upon to do so. In the case of Baldwin v. Phoenix Insurance Company, 107 Ky. 356, 54 S. W. 13, 92 Am. St. Rep. 362, it was shown that it had been the custom of the agent of the insurance company to issue the policies of insurance to customers and charge them with the premiums, and, at his pleasure, present and collect these premium accounts, and the court held that one who had so dealt with the agent had a right to rely upon this method of doing business, and, in the absence of a notice to the contrary, presume that it would be followed by the company with reference to other contracts of insurance; and, continuing, the court said: "We think this method of transacting business was, in effect, giving a credit to the appellant for the premium and he had the right to understand that he was getting credit therefor, and that he was entitled to pay it upon demand only." In that case, as in others, this court has held that where the insured had a running account

with the agent of the company, as is shown in the case at bar, the insurance was not invalidated because the premiums were not paid in cash. In the case of Security Fire Insurance Company of New York v. Kentucky Marine & Fire Insurance Company, 7 Bush 81, 3 Am. Rep. 301, this court in a carefully considered opinion recognized the validity of a parol contract of insurance. The correctness of this proposition is not disputed by appellant, but it seeks to avoid the effect thereof by alleging that the agent, Bolling, did not have authority to make the contract of insurance, and this brings us to the second question under consideration.

The record shows that R. O. Breuer was the general agent of appellant company. Although his agency was styled and known as Breuer & Co., he was, in fact, the sole owner of the agency. He testifies that Bolling had been working for him under a verbal agreement, for some years as a solicitor, and that his duties were limited to soliciting applications for insurance, although he admitted that as such solicitor he was provided with the scale of rates furnished by the Underwriters Association for Louisville, and at times collected and received premiums due the agency. Bolling testifies to practically the same state of facts, as did also the other employes in the office of Breuer & Co. It is not denied that R. O. Breuer, doing business as Breuer & Co., was the general agent of the appellant company. As such, he had full power and authority to act for the company, and this necessarily carried with it the authority to hire or employ sub-agents. Unquestionably a general agent has authority to bind the company by his acts to the extent of modifying or varying the terms and conditions of the contract of insurance, or waiving express conditions of

the policy, which would, in the absence of such waiver, operate as a forfeiture. This power on the part of the general agent is universally recognized, but in many jurisdictions it is held that it can not be delegated to sub-agents, while in still others a contrary view is expressed. In this State, in the case of Phoenix Insurance Company v. Spiers & Thomas, 87 Ky. 285, 8 S. W. 453, 10 Ky. Law Rep. 254, it was held that: "The acts of an agent within his ostensible authority are binding upon his principal. If the latter has authorized the opinion that he has given more extensive authority than he has in fact, he will be estopped to deny it. If he holds him out as his general agent, he will be bound by his acts and conduct, although, as between them, his powers are in fact limited, provided the party dealing with him has no notice of the restriction. Thus, if the agent be intrusted with the general management of a business, he has implied general authority to do all that ordinarily enters into the conduct of that business. * * * The authority of the agent need not be express. It may be implied from circumstances, and may thus exist as to third parties, although in fact forbidden by agreement between the company and its agent. * * * The tendency of recent decisions, and we think properly, is to hold the insurer bound by the acts and conduct of the local agent whenever it can be done consistently with the rules of law. The maxim, 'Qui facit per alium facit per se,' should apply with peculiar force to the acts of an insurance agent. He usually represents a company remotely located. Its patrons in his vicinity naturally look to him for direction generally as to the insurance obtained through him. He is generally regarded as having full power in refernce to it. Being usually the only man upon the ground having anything

to do with it, the persons insured in his company, with few, if any, exceptions, would, in the absence of notice that his powers were limited, regard his statement as to any matter relative to such insurance as authoritative. and any notice to him as to it as sufficient. They rarely know anything of the company or of its officers who issue the policies, and look to the agent through whom they have obtained the insurance as the complete representative of the company in everything connected with that insurance. If they did not consider that they were authorized to do so, it would undoubtedly create distrust and cripple the business. As to third parties, the agent should, in the absence of notice to the contrary, be regarded as possessing all the powers his occupation fairly imports to the public. Under this rule an agent who solicits the insurance, takes the application, receives the premium, and delivers the policy may, in our opinion, by his conduct or acts, bind his company by way of waiver of a forfeiture on account of additional insurance, in the absence of knowledge upon the part of the assured that his powers in this respect have been restricted. This being so, it follows that the knowledge of the agent under such circumstances is to be imputed to the company." In the case of Wright's Admr. v. Northwestern Mutual Life Insurance Company, 91 Ky. 208, 11 Ky. Law Rep. 519, 15 S. W. 242, this court said: "It seems to us, considering the amount of business intrusted to and, done by soliciting agents of insurance companies, the circumstances under which, and persons with whom, it is generally done, and the opportunities they have and temptation put in their way by the companies to overreach those desiring, or, rather, those whom they persuade, to insure, the rule mentioned would be nearly inop-

erative if not made to apply to them as well as general agents; for a large, if not largest, portion of the business and consequent profits of life insurance companies is obtained by them. They are empowered to solicit and receive applications, which every company well knows can not in many, if not most, cases, be made out intelligibly by applicants without their advice and instruction; and, moreover, as pay for their services is made to depend upon commissions on premiums collected, they have a direct interest in making each application conform to the requirements of the company, which may be and often is done by explanations and assurances that are deceptive, yet relied on by the insured. We think not to make an insurance company responsible for acts and declarations of its soliciting agents in the matter of preparing applications would not only give it undue advantage of ill informed and unsuspecting persons, but be an invitation to both the company and its agents to take it; and consequently the instruction in this case should have been made applicable to soliciting as well as general agents." The rule announced in these two cases has been followed with approval in London, etc., Insurance Company v. Gerteisen, 106 Ky. 815, 21 Ky. Law Rep. 471, 51 S. W. 617; Citizens' Insurance Company v. Crist, 56 S. W. 658, 22 Ky. Law Rep. 47; Mudd v. Insurance Company, 56 S. W. 977, 22 Ky. Law Rep. 308; Hille v. Adair, 58 S. W. 697, 22 Ky. Law Rep. 742; Insurance Company v. Hartley, 67 S. W. 19, 68 S. W. 1081, 24 Ky. Law Rep. 60; Insurance Company v. Thomason, 84 S. W. 546, 27 Ky. Law Rep. 159.

The rulings of the Supreme Courts of North Carolina, West Virginia, New York, Oregon, Massachusetts, and many others are in accord with our own in holding the company responsible for the acts of the

sub-agents, who are given authority to solicit applications for insurance, collect the premiums, and deliver the policies, in the absence of notice on the part of those with whom they deal that their authority is limited. In the case at bar, by appellant's own witnesses, it is conclusively shown that the agent, Bolling, was the "outside man" in the conduct of practically all of the business of the agency of Breuer & Co. He was the only man with whom the public came in contact. He solicited the insurance, received the premiums, delivered the policies, and, so far as the public could know, had full power and authority to represent his company in all matters pertaining to the insurance, and to close the contract therefor. He sought out appellee as he had theretofore done, discussed the value of the property to be insured, the rates and terms with him, and agreed with him upon every material point affecting the risk, and appellee had a right, in the absence of notice to the contrary, to regard him as an agent of the company with power and authority to bind the company for which he was acting. It was impossible for appellee to know the extent of Bolling's authority to bind the company. He wanted insurance, applied for same to the general agency, and Bolling, in response to that inquiry, called upon him and entered into the contract of insurance with him, as above set out, and, as between appellee and the company, Bolling must be regarded as an agent of the company with power and authority to bind it in the way and manner in which he undertook to do. He had been transacting business for the agency which wrote business for this company for some four or five years. Appellant had received the benefits of his labor during this period of time, part of which had accrued from business transacted with appellee exactly as this busi-

ness was transacted. Appellant allowed Bolling to be thus held out to the general public as an agent with authority to represent it and accepted the benefits of all of the business which he, while thus acting, brought to it, and it will not now, when a loss has been sustained, be heard to repudiate that agency, and say that he did not have authority to do the very acts and things which he has been doing this long period of time.

The judgment is therefore affirmed.