# Mutual Benefit Health & Accident Association
## v. Smith.

(Decided Dec. 18, 1934.)

WM. MARSHALL BULLITT, BRUCE & BULLITT, ROBERT LEE BLACKWELL and WILLIAM F. McMURRAY, Jr., for appellant.

EATON & BOYD for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appeal is from a judgment in favor of Dr. Sydney Smith, a dentist of Paducah, for the accruements and right to recover future monthly indemnity of $100 of the appellant under a health and accident insurance policy on account of total disability resulting from pernicious anemia. The principal point of defense being pressed on appeal is that in his application the insured knowingly made material misrepresentations. The response was and is a denial and plea of estoppel by waiver of the agent who took the application. Over against this is the contention of the company that such person was not its agent, and, in any event, that the alleged waiver embraced only one of several misrepresentations. Other questions raised appear in the course of the opinion.

The following questions and answers contained in the application are involved:

"Q. Has any application ever made by you for life, accident or health insurance been declined? A. No.

"Q. Has any life, accident or health policy issued to you been cancelled? A. Accident policy cancelled but reinstated.

"Q. Have you ever made claim for or received indemnity on account of any injury or illness; if so, give companies or associations, dates, amounts, and causes? A. Yes, Reliance Life April or May 1928.

"Q. Have you ever had any of the following diseases, heart disease? A. No."

The application was taken and the answers written by Jessie O. Rutter. The appellant's authorized local agent was L. T. Lindsey. For three or four months he had placed application blanks in the hands of Rutter and several other men that they might solicit business for him for a division of his commissions. The practice was for Lindsey to approve the applications by his own signature and transmit them to the proper office of the company for its acceptance or rejection. These brokers, as such subagents are called, and their acts were unknown to the company and its general agents. Dr. Smith's application was delivered to Lindsey by Rutter, and it appears that he afterward had a talk with the applicant and suggested a change in the kind of policy for which he had applied. Lindsey testified that there

was another application filled out by Dr. Smith, but his testimony is so extremely ambiguous that it cannot be determined just what did occur and whether it was the application filled out by Rutter or another that was sent to the company to become the basis of the policy. Considering the testimony in connection with an inspection of the original application, it would seem from the erasures thereon merely that the class of policy was changed on the application taken by Rutter. At any rate, this application contains the answers as copied above.

Upon interrogation by his own attorney, Dr. Smith denied having made or been paid any of five certain claims under a policy issued to him by the United States Fidelity & Guaranty Company. The defendant offered to prove by an officer of that company that it had paid those claims during the period from March 10, 1913, to May 19, 1924, but the court sustained the plaintiff's objection and refused an instruction on the plea.

Dr. Smith's evidence in relation to the matter of estoppel or waiver is that in answering the question as to previous claims for indemnity, he told Rutter "that I had insurance in the Reliance and that I had others and he said that was all I need to give." And further:

"Q. Did you or not at this time tell him you had made claims in the past and he told you it was not necessary to give any except the last one? A. Yes.

"Q. What did he tell you and what did you tell him? A. I gave him the Reliance that is all."

There was no contradictory evidence. In our opinion this statement is not sufficient to cover the representations that no insurance application had ever been declined or policy canceled. It is sufficient to work an estoppel against the company to rely upon misrepresentations as to having never made a claim for or received indemnity on account of an injury or sickness except against the Reliance Insurance Company providing Rutter is to be regarded as the agent of the company.

The established rule in this jurisdiction is that knowledge of a soliciting agent taking an application for insurance and his acts of waiver are attributable to the

company he is representing.   Continental Cas. Co. v. Linn, 226 Ky. 328, 10 S. W. (2d) 1079; Provident Life & Accident Ins. Co. v. Parks, 238 Ky. 518, 38 S. W. (2d) 446; Metropolitan Life Ins. Co. v. Trunick's Adm'r, 246 Ky. 240, 54 S. W. (2d) 917; Sun Indemnity Co. v. Hulcer, 251 Ky. 484, 65 S. W. (2d) 471.   So much is conceded by the appellant.   But it submits that it cannot be bound by the waiver of Rutter, who had never been licensed or authorized by the company to represent it and who was in fact unknown to the general agents and other officers of the company. It is proved in this record that the brokerage of insurance in this manner is a common practice. And so it appears from the reported cases. The authorities generally are not in accord as to the relationship of such a broker and the company he purports to represent and for whom he solicits business.

It is said in 14 R. C. L. 1157:

"It is generally held that the knowledge of, or notice to, an insurance broker is not imputable to an insurer from which he procures a policy, even though the insurer's agents share their commissions with him.   And a provision in a statute governing the relations of foreign insurance companies to the state, and requiring certain things to be done by agents representing them, that the term 'agent' shall include 'any person who shall in any manner aid in transacting insurance business' of any company not incorporated by the laws of the state, does not make a broker procuring insurance for a property owner the agent of the insurer so as to bind it with his knowledge.   However, there is authority to the effect that the knowledge of an agent soliciting insurance who turns over the application to a company which he does not represent, which issues and delivers a policy to him, waives a breach, as by accepting the application it recognizes him as its agent."

The broad distinctions are thus given in Cooley's Brief on Insurance, pages 3992, 3993:

"A mere insurance broker who procures a policy from an insurer for an applicant is not such an agent for the insurer as to have power to waive a forfeiture arising out of a breach of a condition of the policy procured by him. * * *.

"If an insurance agent to whom an application for insurance is made procures the policy from a company for which he is not the regularly appointed agent, he will, for that policy, be regarded as the agent of the company issuing it, so that the latter will be bound by his acts and statements at the time of issuing the policy, just the same as if he was its regularly appointed agent."

See Annotations, 38 L. R. A. (N. S.) 634.

We are among those courts holding the company responsible for any act of waiver on the part of a broker under circumstances like those presented by this record.

Section 633, Ky. Stats., declares that:

"Whoever solicits and receives applications for insurance on behalf of any insurance company, or transmits for any person other than himself an application for insurance, or a policy of insurance to or from such company, or advertises that he will receive or transmit the same, or who shall, in any manner, directly or indirectly, aid or assist in transacting the insurance business of any insurance company, shall be held to be an agent of such company within the meaning of this article, anything in the policy or application to the contrary notwithstanding. * * *"

See for interpretations of similar statutes in relation to a like situation or relation, Cooley's Briefs on Insurance, page 4160; Maryland Cas. Co. v. McTyier, 150 Tenn. 691, 266 S. W. 767, 48 A. L. R. 1168; Pollock v. German Fire-Ins. Co., 127 Mich. 460, 86 N. W. 1017; Continental Ins. Co. v. Ruckman, 127 Ill. 364, 20 N. E. 77, 11 Am. St. Rep. 121.

Without reference to this statute, it was held in London & Lancashire Ins. Co. v. Gerteisen, 106 Ky. 815, 51 S. W. 617, 618, 21 Ky. Law Rep. 471, that such a broker is to be regarded as the agent of the company. In that case Rudd was the authorized local agent. He had put blanks in the hands of Hawes to secure the application for a policy of fire insurance on a distillery. In taking the business, Hawes was told that the applicant did not have complete title to the property and he knew that the plant would not be in operation for some

time. After a fire occurred, the company declined payment upon these two grounds, and the insured relied upon estoppel. We wrote:

"According to the testimony, Hawes was, in effect, the partner of Rudd in effecting this insurance. The rule that a delegated authority cannot be delegated has some limitations. It is usual for insurance agents who issue policies to send out solicitors to take applications on which the policies may be issued, and authority to do so may be inferred, nothing appearing to the contrary, for this is the common way the business is done. When Hawes came to appellee professing to be an insurance agent, and took his application, and obtained for him the policy of insurance, he had a right, without notice of a defect in his powers, to regard him the agent of the company for this purpose; and appellant, by accepting the application, issuing the policy, and keeping the premium, is estopped to say his act was unwarranted, and must take the benefits with the burden."

The opinion of responsibility and estoppel has been followed in Teutonic Ins. Co. v. Howell, 54 S. W. 852, 21 Ky. Law Rep. 1245; Citizens' Ins. Co. v. Crist, 56 S. W. 658, 22 Ky. Law Rep. 47; Germania Ins. Co. v. Wingfield, 57 S. W. 456, 22 Ky. Law Rep. 455; Manchester Assurance Co. v. E. V. Dowell & Co., 80 S. W. 207, 25 Ky. Law Rep. 2240; Pelican Assur. Co. v. Schildknecht, 128 Ky. 351, 108 S. W. 312, 32 Ky. Law Rep. 1257; Illinois Life Ins. Co. v. Wortham (Ky.) 119 S. W. 802.

In the instant case, the conclusion is fortified by the fact that Lindsey, the recognized agent, interviewed Dr. Smith as to his application and, though ambiguous, his evidence is susceptible to the understanding that the application sent the company with the misrepresentations relied on was one which he had filled out and had Dr. Smith to sign and not the application obtained by Rutter.

In so far, therefore, as the plea of estoppel relates to representations concerning the collection of other claims, it must be sustained.

One of the alleged misrepresentations is that the insured had never had heart disease. The only evi-

dence offered to establish the falsity of this statement is contained in the deposition of an officer of the United States Fidelity & Guaranty Company that he had paid Dr. Smith a claim for $37.50 on May 19, 1924, on account of myocarditis, which is a well recognized disease of the heart. The witness deposed that he had personal custody of the records of all accident and sickness claims paid by the company, and some of those records pertaining to Dr. Smith's claims were in his own handwriting and that from his own personal knowledge obtained from the records he knew about the claims which had been paid. At least in respect to trying to establish the fact that Dr. Smith had once been afflicted with heart disease, the offered evidence was extreme hearsay. If he had in fact made such an admission, the writing signed by him obviously is the best evidence. Since there was no evidence tending to establish the untruth of this representation, it follows that the court properly refused to instruct the jury on that point of defense.

The record relating to the plea of misrepresentation as to previous cancellation or rejection of insurance policies involves two such contracts. One with the United States Fidelity & Guaranty Company and the other with the Indemnity Insurance Company of North America. Although the burden was upon the defendant on this issue, the plaintiff assumed, first, to prove the negative.

It will be observed that in the application Dr. Smith stated, in answer to the question whether any policy issued to him had been canceled, that he had had an accident policy canceled but it was reinstated. Asked as to what this policy was, he answered, "I don't know, I never received the policy," and, further, that he never knew anything about it; that he never had one canceled that he knew of; that he did not remember what company it was; and did not remember how he happened to make that answer and could make no explanation. But his illness had not affected his memory, he said.

When asked if he had ever had a policy in the United States Fidelity & Guaranty Company, Dr. Smith testified, "I had one policy but it has been so long ago I have forgotten." An officer of that company testified that on August 24, 1911, it had issued an accident and

health policy for the principal sum of $2,500, with $12.50 weekly benefits, to Sydney Smith, a dentist residing at Paducah, Ky. After payment of the claim for disability due to myocarditis, the company canceled that policy on June 23, 1924, and it was never reinstated.

In regard to the issuance and cancellation of a policy by the Indemnity Insurance Company, we quote Dr. Smith's equivocal and suspicious testimony upon interrogation by his own counsel:

"Q. Did you ever have a policy of insurance in the Indemnity Ins. Co. of No. America? A. I think so.

"Q. In the Indemnity Ins. Co. of No. America? Look at this paper which I show you (handing the witness a paper). A. No sir, that is not my signature.

"Q. Did you ever have a policy of insurance in this Company? A. Not that I know of.

"Q. Look at this signature and tell the jury whether or not that is your signature? A. This is not my signature.

"Q. Did this company ever issue to you a policy and have it taken up? A. I have never seen it.

"Q. Did you ever have their policy? A. No sir.

"Q. Then they never took up any policy from you? A. No sir.

"Q. You say that is not your signature on this application? A. No sir, that is not my signature."

The original application purporting to be that upon which the Indemnity Insurance Company issued its policy to Dr. Smith on January 12, 1925, had been filed with the deposition of an officer of that company. It was submitted to Dr. Smith on his examination and he denied that it bore his signature. The information given in it is in all respects descriptive of Dr. Smith and corresponds with the statements contained in his application for the policy sued on. It shows that it was solicited or taken by the Halteman Insurance Agency of Paducah, Ky. Two bank tellers testified that it was not Dr. Smith's signature, although one of them

was not very positive. Dr. Smith at first did not recognize his admittedly genuine signature on the application involved in this suit. He said also he did not remember signing it. On the contrary, there is substantial proof that this Indemnity Insurance Company's application bore his signature. A comparison of the original exhibits is most persuasive of genuineness. The matter of the signature and application assumed, perhaps, a disproportionate importance in the trial, for the real question was the issuance and cancellation of the rejection of the policy. Dr. Smith admitted having had fire and life insurance transactions with Frank B. Smith. As to health and accident insurance, he could not tell, "It has been so long ago I have forgotten about that," and he stated he could not testify one way or another on that point. A little later he testified that he had once taken out a health and accident policy with Frank B. Smith, but it was years before and it was never delivered to him.

Frank B. Smith deposed that in January, 1925 (which was seven months after the cancellation of the United States Fidelity & Guaranty Company's policy), he solicited Dr. Sydney Smith and told him he would try to get the insurance through Halteman, who was representing the company and for whom he was brokering. Halteman had filled out the application blank. Upon this application an accident and health policy was issued by the Indemnity Insurance Company of North America, and he, the witness, had delivered it to Dr. Smith. Two or three weeks later upon advice from Halteman that the company wanted to take it up, he got the policy from Dr. Smith and delivered it back to Halteman.

J. A. Halteman's evidence substantiates that of Frank B. Smith. He sent the application into the company and a policy was issued to Dr. Smith shortly thereafter which was delivered to him. A few days later he asked Frank B. Smith to take up the policy which he did, and Halteman marked it canceled and mailed it back to the company. No premium was paid. The policy was never reinstated.

W. E. Kipp, an officer of the Indemnity Company, deposed that the application of Dr. Sydney Smith, a dentist of Paducah, was received by his company and the policy was issued to him on January 29, 1925. On

February 11, 1925, the Halteman Insurance Agency was instructed to "pick up the policy and return it for cancellation." It was received and canceled on February 25, 1925, and never reinstated.

In rebuttal Dr. Smith denied that any policy of the Indemnity Insurance Company was ever issued or delivered to him or taken up, or that Frank B. Smith ever told him that he had been instructed to take up any such policy.

The defendant conclusively established the materiality of the several questions and answers of the application, and proved that had the truth (as it was claiming it to be) been disclosed, the policy would not have been issued. The law is that, if by substantial falsity of material answers in an application the insurance company was induced to issue the policy, then it may avoid liability irrespective of the insured's knowledge that they were untrue. False representations, if fraudulently made, will defeat recovery under the policy regardless of their materiality. Penick v. Metropolitan Life Ins. Co., 220 Ky. 626, 295 S. W. 900; Globe Indemnity Co. v. Daviess, 243 Ky. 356, 47 S. W. (2d) 990. The record shows so overwhelmingly that the insured had had other previous insurance of the same character canceled that we cannot escape the conclusion that the verdict is flagrantly against the evidence on this issue of misrepresentation.

Accordingly, the judgment is reversed.

Whole court sitting.