**KENTUCKY MACARONI CO. v. LONDON & PROVINCIAL MARINE & GENERAL INS. CO., Limited.**

**SAME v. ROYAL INS. CO., Limited.**

**Nos. 6936, 6937.**

Circuit Court of Appeals, Sixth Circuit.

April 16, 1936.

Robert S. Marx, of Cincinnati, Ohio (Robert F. Vaughan, of Louisville, Ky., and Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio, on the brief), for appellant.

Frank M. Drake, of Louisville, Ky., for appellees.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appellant sued in the court below upon two policies of fire insurance. The cases were consolidated for trial, since they involved the same issues, and, upon motion for directed verdict made by each of the parties at the conclusion of all of the evidence without reservation, the court instructed for the defendants. From the judgments which followed, the plaintiff appeals.

The controversy concerns itself with the status of the broker who delivered the policies, as to whether he was agent for the insurers or the insured, and, as now presented, involves also a question of collusion between the broker and the policyholder. An understanding of the issues requires narration of the circumstances under which the policies were executed and delivered and exposition of the relationship to one another of the several parties concerned in the transaction. It is the contention of the insurers that no contracts of insurance were concluded with the insured at the time of the loss by the execution and delivery of the policies here involved.

The Kentucky Macaroni Company, plaintiff, is a Kentucky corporation doing business at Louisville. The defendants are foreign corporations licensed to do business in Kentucky. Their local agent in Louisville was the firm of Gaunt & Harris, representing also other companies in the general insurance business. The Rosa-Beeler Company was a corporation engaged in the

general real estate and insurance business in Louisville. Romano Rosa, its principal stockholder, was also largely interested in the Macaroni Company, but was never active in the insurance business, that being operated entirely by his associate, J. Argyle Beeler, although Rosa may have been instrumental in securing the Macaroni Company's line for the Rosa-Beeler Company.

At the time with which we are concerned all of the insurance of the Macaroni Company had for some time been written by the Rosa-Beeler Company. It amounted to $155,000, exclusive of the policies here involved. The Rosa-Beeler Company represented through Gaunt & Harris only one insurer, the Travelers, all other insurance coming to its office in excess of what the Travelers would take being placed through Gaunt & Harris in other companies represented by the latter. The practice on such insurance was for Gaunt & Harris to bill Rosa-Beeler for premiums and for Rosa-Beeler to bill its own customers and pay Gaunt & Harris the net premiums after deducting agreed commissions. Customary credits were extended by Gaunt & Harris to Rosa-Beeler, and Rosa-Beeler extended its own credits to its customers.

The Louisville Board of Fire Underwriters is a local organization of insurance agents which the companies maintain for the purpose of promoting proper practices in the insurance business. It recognizes two classes of agents, member agencies and solicitors. Gaunt & Harris held a member agency. At its instance a solicitor's certificate was issued to Beeler individually on April 3, 1931, which certified that Gaunt & Harris had been granted permission to engage J. Argyle Beeler to solicit applications. The certificate was sent to Beeler by Gaunt & Harris on April 10, 1931. It was the contention of the defendants that the solicitor's certificate authorized Beeler as a solicitor of insurance for the Travelers Insurance Company only, and not for other companies, though the certificate is not thus limited. In respect to other companies Beeler, they say, was merely a broker.

During the continuance of the relationship between Gaunt & Harris and the Rosa-Beeler Company a large number of policies had been issued, including many in each of the defendant companies. Among the policies issued by Gaunt & Harris to the Macaroni Company through Beeler was one in the Norwich Union Fire Insurance Society for $6,000, and another in the Boston Insurance Company for $5,000. On or about March 12, 1932, Gaunt & Harris decided to surrender their agency for these companies, whereupon the companies requested cancellation and return of all policies written for them. Gaunt & Harris rewrote the Norwich policy with the appellee London & Provincial and the Boston policy with the appellee Royal. The new policies were then sent to Beeler with the request that they be substituted for the old policies and the latter promptly returned for cancellation. Nothing having been heard from Beeler by April 14th, a follow-up letter was sent in respect to each policy with a request that the matter be given immediate attention. Shortly thereafter Beeler interviewed Harrison, office manager for Gaunt & Harris, and urged that some arrangement be made by which cancellation of the old policies might be avoided so as to make it unnecessary for the assured to accept new policies at increased rates. Harrison undertook to secure the consent of the companies to reinsure the Norwich and Boston policies. This was later obtained, and confirmed by the Gaunt & Harris letter of May 17th, wherein Beeler was informed that it would not be necessary to disturb the existing contracts. No request for return of the new policies was made. In the meantime, however, Beeler, claiming that Harrison had relieved him of the instructions to pick up the old policies, sold the new ones to the plaintiff as additional insurance in the latter part of April. The new policies had been billed to Beeler on both the April and May billings of Gaunt & Harris, though Beeler had not informed Gaunt & Harris that they had been sold. On May 28th the insured property was destroyed by fire. The next day Beeler sent a check to Gaunt & Harris for his account, but on July 10th Gaunt & Harris sent a check to Beeler for the amount represented by the premiums on the questioned policies.

Under the facts thus outlined the controversy is reduced to narrow compass. There was no dispute about the amount of the loss, and it is not contended that the plaintiff was overinsured. Decision must rest upon a determination as to whether Beeler was an agent of the defendants and, if so, whether delivery of the new policies to the plaintiff came within the scope of his authority. The plaintiff contends that, even if limited to the application of common-law principles governing agency, Beeler was the agent of the insurers. Though this

128

contention was rejected below, we are not required to pass upon it by reason of section 633, Carroll's Kentucky Statutes, which we think controls decision as to Beeler's status. It is printed in the margin.[1] It will be noted that the language of the section is of great breadth and without qualification, and that "whoever solicits and receives applications for insurance on behalf of any insurance company, or transmits for any person other than himself an application for insurance, or a policy of insurance to or from such company, or advertises that he will receive or transmit the same, or who shall, in any manner, directly or indirectly, aid or assist in transacting the insurance business of any insurance company, shall be held to be an agent of such company within the meaning of this article, anything in the policy or application to the contrary notwithstanding." It will be observed that the statute prescribes a certain legal effect to be given to definite acts in respect to insurance, its solicitation, the transmitting of policies, or, more generally, the aiding or assisting in the transacting of insurance business.

Statutes of like import have been applied and held valid against constitutional objection in the courts of the United States and in those of the states. Controlling upon us is American Fire Insurance Co. v. King Lumber & Mfg. Co., 250 U.S. 2, 39 S.Ct. 431, 433, 63 L.Ed. 810; Stipcich v. Metropolitan Life Insurance Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895. The contention that the present statute applies only to situations where actual agency for some purpose primarily exists and is designed only to prevent the insurer from casting off the obligations of principal under certain circumstances must be rejected upon the reasoning of the King Case. Likewise

must be rejected the contention that the statute does not apply to one who is a broker and not by consent in privity with the insurer, for the alleged agents in the King Case were brokers. They had no preliminary authority to solicit insurance, but, the insurance having been accepted by the company, the relation became by virtue of the Florida statute one of agency. As was there said: "There is nothing unreasonable in the conditions; they regulate the transactions, do not prevent them, or even embarrass them by ambiguity. A company is informed what it may incur by underwriting insurance in the state, and it cannot assert surprise or ignorance—certainly the insurance company in the present case cannot do so. It had knowledge or must be charged with knowledge of the law." And again: "It [the company] accepted the benefit of their action while premiums were being received and new policies were being issued. It is rather late to reject the consequence."

The Kentucky courts have construed the statute to apply to situations such as this. In Pelican Assurance Co. v. Schildknecht, 128 Ky. 351, 108 S.W. 312, it was held that the solicitor acting for the appellant's agent must be regarded as an agent of the company. The latest expression by the Kentucky court is in accord. Mutual Benefit, Health & Accident Ass'n v. Smith, 257 Ky. 288, 77 S.W.(2d) 957. There the solicitor was given application blanks by the local agent. Though unlicensed and not expressly authorized by the insurer to represent it, the company was held liable. By these local constructions of the statute we are, of course, under congressional mandate and familiar principles, bound.

But it is the defendant's contention that Beeler violated his instructions. He

[1] Licenses to agents of foreign companies must be renewed annually in the same manner as original licenses, upon a finding by the commissioner that the company represented by the agent has fully complied with the law, and maintains its required capital or reserve; and whoever solicits and receives application for insurance on behalf of any insurance company, or transmits for any person other than himself an application for insurance, or a policy of insurance to or from such company, or advertises that he will receive or transmit the same, or who shall, in any manner, directly or indirectly, aid or assist in transacting the insurance business of any insurance company, shall be held to be an agent of such company within the meaning of this article, anything in the policy or application to the contrary notwithstanding; and any person acting as the agent of any company within the meaning of this section, without first procuring and having a license from the commissioner to act as such agent, or, after such license has expired, been suspended or revoked, or who shall procure any premium or obligation therefor by fraudulent representations, shall be deemed and held to be guilty of a misdemeanor, and, upon conviction for such offense, shall be fined not less than fifty nor more than one hundred dollars for each offense.

was given the new policies for a limited purpose—to deliver them to the Macaroni Company in substitution of policies which were to be canceled. He deliberately violated these instructions, failed to take up the old policies, and sold the new ones. It requires no citation of authorities, however, to demonstrate that one dealing with an agent acting within the apparent scope of his authority is not bound by instructions to the agent not communicated to him, and evidence is entirely lacking as to any knowledge on the part of the Macaroni Company as to the purpose for which the executed policies were delivered to Beeler. Nor does it require citation to demonstrate that Beeler, having authority generally to deliver policies he had solicited, was acting within the apparent scope of his authority when he delivered those here involved. He had before delivered many policies without question. The point ruled upon in Sun Insurance Office v. Scott, 284 U.S. 177, 52 S.Ct. 72, 76 L.Ed. 229, does not here arise.

There remains the implication of collusion on the part of Beeler and the Macaroni Company. While not perhaps categorically asserted, it is sufficiently suggested that the policies were not delivered to the Macaroni Company until after the fire. Thus a question of fact is said to arise as to their delivery prior to that time. While the defendants are unable to support their view by direct evidence, it is asserted that there are circumstances presented in the record which warrant a reasonable inference that the whole transaction in respect to the policies here involved was a collusive arrangement between Beeler and the Macaroni Company to take advantage of Beeler's possession of executed policies at the time of the fire so as to enable the Macaroni Company to claim they were contracts completed before the fire. Such inference, it is urged, sustains the verdict. But both Beeler and Costigan of the Macaroni Company testified explicitly to the delivery of the policies in April, the accounts payable ledger of the Macaroni Company records a debit for the premiums, and there is no countervailing evidence. Circumstances justifying inquiry there may have been, such as the failure of Beeler to say anything about having sold the policies, Costigan's difficulty at first in recollecting the date when the policies were delivered, the acceptance by the Macaroni Company at a higher rate of eleven months' protection

for a twelve months' premium, and the connection of Rosa with both companies. Opportunity for fraud there likewise was, presented by the failure of Gaunt & Harris to take up the executed contracts. But these things are not enough, nor do they point inevitably to the plaintiff as a participant. We have recently in Equitable Life Assurance Society v. Johnson, 81 F.(2d) 543, 547, discussed the requirements of proof to establish fraud, and reviewed the authorities. "Fraud is not to be presumed and the burden of establishing it was upon appellees. They were not required to establish it beyond a reasonable doubt, * * * but something more is required than the mere weight, or preponderance, of the evidence. It is essential that the evidence should be clear, unequivocal, and convincing. It must be cogent and leave the mind well satisfied that the allegations are true. * * * Any other rule would lay written instruments open to captious challenge and would reduce them to scraps of paper." It must be noted that the District Judge did not base decision upon any element of fraud or collusion in the delivery of the policies, nor, though he heard the evidence, did he cast doubt upon the time of their delivery. He based his instructions upon the legal conclusion that Beeler as an independent broker was the agent of the insured and failed to make application of the Kentucky statute. This was error.

Judgment reversed, and cause remanded for new trial.